

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Junta de Directores de la Asociación de Empleados del Estado Libre Asociado de Puerto Rico y su presidente, Juan J. Lebrón Concepción, en su capacidad oficial, por sí, en representación y para beneficio de la Asociación de Empleados del Estado Libre Asociado de Puerto Rico<br><br>Peticionarios<br><br>v.<br><br>Pablo Crespo Claudio<br><br>Asamblea de Delegados de la Asociación de Empleados del Estado Libre Asociado de Puerto Rico, su presidente, Nery Cruz Reyes, su vicepresidenta Lissette Rodríguez Casado, su Secretaria Wanda I. Falú Villegas, y su Macero, Jorge Rodríguez Pérez<br><br>Recurridos | Certiorari<br><br>2012 TSPR 106<br><br>185 DPR ____ |

Número del Caso: CC-2010-376

Fecha: 21 de junio de 2012

Materia: Sentencia con Voto de Inhibición

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Junta de Directores de la Asociación de Empleados del Estado Libre Asociado de Puerto Rico y su presidente, Juan J. Lebrón Concepción, en su capacidad oficial, por sí, en representación y para beneficio de la Asociación de Empleados del Estado Libre Asociado de Puerto Rico<br><br>Peticionarios<br><br>v.<br><br>Pablo Crespo Claudio<br><br>Asamblea de Delegados de la Asociación de Empleados del Estado Libre Asociado de Puerto Rico, su presidente, Nery Cruz Reyes, su vicepresidenta Lissette Rodríguez Casado, su Secretaria Wanda I. Falú Villegas, y su Macero, Jorge Rodríguez Pérez<br><br>Recurridos | CC-2010-376 |

SENTENCIA

En San Juan, Puerto Rico, a 21 de junio de 2012.

En esta ocasión, tenemos ante nuestra consideración un asunto que no presenta una controversia viva y latente que requiera nuestra atención. E.L.A. v. Aguayo, 80 D.P.R. 552 (1958). *Los hechos y el derecho* cambiaron durante el trámite apelativo. Por los fundamentos que expresamos a continuación, desestimamos el pleito por académico.

I

El 5 de marzo de 2009 el Sr. Pablo Crespo Claudio, Director Ejecutivo de la entonces Asociación de Empleados del Estado Libre Asociado, remitió una carta a la Junta de Directores de esa entidad. El señor Crespo Claudio comunicó en esa carta su decisión de acogerse al retiro a finales de junio de 2009. A esos efectos, la carta esboza lo siguiente:

> En agosto de 1997, fui honrado con el nombramiento de Director Ejecutivo.
>
> He tratado de ofrecer lo mejor de mi ser en todas las posiciones que he ocupado. Después del tiempo transcurrido haciendo lo que entiendo ha sido lo más correcto, me acogeré a los beneficios de jubilación; efectivo el 30 de junio.
>
> Confío en haber prestado mis servicios con la mayor diligencia y en defensa de los intereses colectivos de los empleados y ex-empleados públicos.

Apéndice, pág. 243.

Con posterioridad a esa carta, el señor Crespo Claudio envió otra comunicación escrita a la Junta de Directores en que indicó que deseaba continuar en el puesto de Director Ejecutivo, pero bajo un contrato de servicios profesionales. Por eso, unió a su carta una propuesta en que detalló todo lo relacionado al término, compensación y terminación de la relación contractual. Apéndice, págs. 244-250.

El 29 de abril de 2009, la Junta de Directores se reunió y evaluó ambas comunicaciones. Decidió aceptar la

renuncia del señor Crespo Claudio a la posición de Director Ejecutivo y denegar su oferta para continuar en el cargo por contrato de servicios. Sin embargo, en reconocimiento a su experiencia, determinó ofrecerle un contrato de consultoría. Cónsono con lo anterior, la Junta de Directores le envió al señor Crespo Claudio una propuesta de contrato junto con un memorando en que aceptó su renuncia.

La Junta, a su vez, emitió el Acta Núm. 2241, 6-15, en que informó a todos los delegados la renuncia del señor Crespo Claudio por motivo de su jubilación, efectiva el 30 de junio de 2009. Apéndice, pág. 262. Asimismo, para informar lo acontecido circuló un memorando a la Asamblea en que informó lo mismo. Debido a lo anterior, el Presidente de la Asamblea, el Sr. Nery Cruz Reyes, le solicitó una reunión al Comité Ejecutivo de la Junta de Directores para discutir la dimisión del Director Ejecutivo. Apéndice, págs. 279-280.

Así las cosas, el 13 de mayo de 2009 el señor Crespo Claudio sometió una segunda propuesta de contrato de servicios con la intención de modificar su primera oferta. Mientras tanto, ese mismo día la Comisión para Asuntos de la Junta y la Asamblea, adscrita a la Asamblea de Delegados, cursó comunicación con la Junta de Directores para informarle los acuerdos alcanzados por la Comisión en relación con la renuncia del Director Ejecutivo. En síntesis, acordaron solicitarle al señor

Crespo Claudio que "retir[ara] la renuncia", a cambio de mantenerse en el cargo de Director Ejecutivo por un periodo de dos años o hasta que culminara el término de la Junta de Directores en funciones. Apéndice, pág. 297.

Al día siguiente, el señor Crespo Claudio le notificó por escrito a la Comisión su determinación de "[p]osponer mis planes de jubilación y, por tanto, retirar mi renuncia". Apéndice, pág. 298. Esa decisión se anunció a la Junta de Directores de forma simultánea. La Junta de Directores respondió que como ya había aceptado la renuncia, y el puesto en controversia se declaró vacante mediante las Actas 6-15 y 8-15 de 29 de abril de 2009, atendería la solicitud en su próxima reunión. El 1 de junio de 2009 se celebró la reunión. La Junta de Directores determinó ordenarle al señor Crespo Claudio que "[c]omen[zara] el período de vacaciones regulares al recibo de este Acuerdo, hasta la fecha de efectividad de la renuncia". Apéndice, pág. 301.

Inconformes con el acuerdo de la Junta de Directores, la Asamblea de Delegados convocó una reunión extraordinaria para discutir el asunto. Posteriormente, la Asamblea de Delegados ordenó a la Junta de Directores que de forma inmediata:

> Acept[ara] el retiro de la renuncia del Director Ejecutivo y mantenga al Sr. Pablo Crespo Claudio como Director Ejecutivo, bajo las mismas condiciones de trabajo existentes previo a su renuncia por un término de dos años o hasta que culmine el término de la presente Junta de Directores.

Apéndice, pág. 302.

Sin embargo, la Junta de Directores mantuvo su postura de no aceptar el retiro de la renuncia del señor Crespo Claudio y nombró a un Director Ejecutivo Interino. A raíz de ello, la Asamblea de Delegados le notificó a la Junta de Directores el inicio de una acción disciplinaria en respuesta al desacuerdo.

La Junta de Directores, en atención a lo anterior, presentó una demanda de interdicto preliminar, permanente y sentencia declaratoria contra la Asamblea de Delegados, su Presidente, el señor Cruz Reyes y el señor Crespo Claudio. En ella, solicitó que se le ordenara al señor Crespo Claudio cumplir con la determinación de la Junta de Directores para que se acogiera a una licencia de vacaciones hasta el 30 de junio de 2009, y que se abstuviera de destruir o remover de las instalaciones de la AEELA cualquier documento o propiedad de la Asociación. Además, pidió que se determinara que el poder de nominar al Director Ejecutivo residía en la Junta de Directores, por lo que la Asamblea de Delegados no podía intervenir en ese proceso. De igual forma, solicitó que se le ordenara a la Asamblea de Delegados, su Directiva y componentes a que se abstuvieran de intervenir con los poderes y prerrogativas de la Junta de Directores. Por último, pidió la paralización de todo procedimiento disciplinario iniciado por la Asamblea de Delegados en

contra de los miembros de la Junta de Directores por hechos relacionados a este caso.

Luego de varios trámites procesales, el Tribunal de Primera Instancia celebró la vista de interdicto permanente. En ese momento, la controversia se limitó a establecer si hubo una renuncia válida por parte del señor Crespo Claudio. Luego de sopesar la prueba documental y testifical, el Tribunal de Primera Instancia emitió una sentencia en que declaró con lugar el interdicto permanente que se solicitó. Cimentó su decisión en que el poder de nominar al Director Ejecutivo se delegó mediante legislación a la Junta de Directores. Por consiguiente, la Asamblea de Delegados no podía intervenir con cualquier determinación sobre ese asunto, ni tampoco podía disciplinar a los miembros de la Junta de Directores por ello.

De igual forma, el foro primario resolvió que la carta suscrita por el señor Crespo Claudio, en la que recoge su decisión de acogerse a la jubilación, constituyó una notificación de renuncia. El Tribunal de Primera Instancia puntualizó que concluir que la misiva en cuestión era un simple aviso de su intención de jubilarse carecía de mérito porque el lenguaje utilizado era determinante e inequívoco al indicar que "me acogeré a los beneficios de la jubilación efectivo el 30 de junio".

En desacuerdo con el dictamen del foro primario, el señor Crespo Claudio apeló ante el Tribunal de Apelaciones. En su escrito, indicó que el foro primario erró en declarar con lugar el injunction permanente. También, señaló que el foro primario erró al no reconocer que la Asamblea de Delegados tenía la facultad de gobernar y supervisar las actuaciones de la Junta de Directores.

Luego de evaluar los argumentos de las partes, el foro apelativo intermedio dictó una sentencia que modificó y confirmó el dictamen del foro primario. En esencia, el Tribunal de Apelaciones determinó que el señor Crespo Claudio renunció a su puesto como Director Ejecutivo, por lo que no procedía hablar de una violación al debido proceso de ley. Además, ese tribunal confirmó la emisión del interdicto permanente contra la Asamblea de Delegados. Sin embargo, sostuvo que la Asamblea de Delegados ostentaba el poder de disciplinar y destituir a los miembros de la Junta de Directores, conforme a la norma establecida en Domenech, Tes. v. Corte, 48 D.P.R. 542, 547 (1935), según la cual, quien está facultado para nombrar, también lo está para destituir. Ahora bien, el foro apelativo intermedio indicó que el motivo de disciplinar a la Junta de Directores no podía estar relacionado con el ejercicio de las prerrogativas que les fueron delegadas exclusivamente por ley a ese cuerpo directivo.

Inconforme con ese dictamen, la Junta de Directores recurrió ante este Foro mediante una petición de certiorari. La Asamblea de Delegados no recurrió de la sentencia del Tribunal de Apelaciones. En su escrito, la Junta de Directores aduce que el Tribunal de Apelaciones erró al concluir que la Asamblea de Delegados podía disciplinarla conforme lo resuelto en Domenech, Tes. v. Corte, íd. En oposición, la Asamblea de Delegados presentó su alegato y sostuvo que la determinación del Tribunal de Apelaciones era correcta en todos sus aspectos.

El 13 de mayo de 2010 expedimos el auto de certiorari. El 22 de julio de 2011 la Asamblea Legislativa aprobó la Ley Núm. 144-2011. Esa Ley enmendó profusamente la Ley Núm. 133 de 28 de junio de 1966, conocida como Ley de la Asociación de Empleados del Estado Libre Asociado de Puerto Rico, 3 L.P.R.A. sec. 862 et seq.

Con posterioridad a esos sucesos, el 12 de agosto de 2011 la Junta de Directores presentó ante este Tribunal una "Moción sobre academicidad por enmiendas a la ley orgánica de la Asociación de Empleados y otros extremos". En esa moción, a la cual no se opuso la parte recurrida, la parte peticionaria afirmó que el caso se convirtió en académico por dos fundamentos.

En primer lugar, la parte peticionaria señala que la configuración de la Junta de Directores y de la Asamblea

de Delegados que existía en el momento en que se emitió el _injunction_ permanente por el Tribunal de Primera Instancia, la sentencia del Tribunal de Apelaciones y la solicitud de _certiorari_ ante este foro no es igual. Es decir, indica que la situación fáctica no es la misma que existía cuando expedimos el auto de _certiorari_ el 13 de mayo de 2010. Así pues, concluye que no existe adversidad real entre las partes que requiera nuestra atención.

En segundo lugar, la parte peticionaria aduce que mediante la Ley Núm. 144-2011 se enmendó extensamente la Ley Núm. 133 de 28 de junio de 1966, _supra_. En particular, el Art. 3 de la Ley Núm. 144, _supra_, establece en lo que nos concierne:

> Los directores servirán hasta la expiración de sus respectivos términos y hasta que se elijan sus sustitutos. Sin embargo, los directores quedarán automáticamente separados del cargo que ocupan por alguna de las siguientes razones:
>
> 1. Cesar por cualquier razón como empleado en la agencia gubernamental cuyos empleados representa ante la Asamblea de Delegados.
>
> 2. Renuncia.
>
> 3. Haber sido declarado culpable por un tribunal competente de cualquier delito grave.
>
> 4. Haber sido declarado incapacitado para regir sus bienes o persona.
>
> Los directores podrán ser separados de los puestos a los que fueron electos en la Junta de Directores solo por justa causa, entendiendo que será justa causa una o más de las siguientes causales:
>
> 1. Utilizar las facultades propias del cargo de Director en beneficio propio o de

algún familiar dentro del tercer grado de consanguinidad o segundo de afinidad.

2. Defraudar o ayudar a defraudar a la Asociación.

3. Revelar información confidencial sobre los negocios o asuntos internos de la Asociación para favorecer a otras personas naturales o jurídicas.

**No constituirá justa causa para la separación de los cargos las meras discrepancias entre los cuerpos directivos en cuanto al ejercicio de las facultades, prerrogativas y responsabilidades que le han sido conferidos por esta Ley a sus miembros. La Asamblea de Delegados no podrá intervenir, revocar ni interferir de forma alguna con las acciones que en ejercicio de las facultades y poderes lleve a cabo la Junta de Directores. La Asamblea de Delegados, ni la Junta de Directores tendrán personalidad ni capacidad jurídica separada a la de la Asociación.** Tanto los miembros de la Asamblea de Delegados, así como los de la Junta de Directores no podrán iniciar acciones derivativas contra la Asociación ni un cuerpo rector contra otro a menos que sean indebidamente privados de ejercer sus facultades, derechos u obligaciones.

El miembro a ser destituido deberá garantizársele un debido proceso de Ley por sus pares que lo eligieron. Éstos serán los que en primera instancia determinen sobre cualquier querella de destitución de su cargo como miembros de la Junta de Directores. Una decisión sobre destitución deberá ser presentada ante la Asamblea de Delegados convocada en asamblea extraordinaria la cual tendrá que ser aprobada por dos terceras partes de los miembros delegados en Asamblea Extraordinaria. Este miembro delegado quedará fuera de la Asamblea de Delegados una vez sea aprobada su destitución de la Junta de Directores y continuará el suplente. La Junta de Directores establecerá un procedimiento mediante Reglamento para atender dicha destitución.

(Énfasis nuestro.)

II

A. Mencionamos recientemente en Asoc. Fotoperiodistas v. Rivera Schatz, 180 D.P.R. 920, 933 (2011), que "un caso se convierte en académico cuando con el paso del tiempo su condición de controversia viva y presente se ha perdido". Como es conocido, un pleito resulta académico si "se trata de obtener un fallo sobre una controversia disfrazada, que en realidad no existe". San Gerónimo Caribe Project v. A.R.Pe., 174 D.P.R. 640, 652 (2008). Véanse, además, Moreno v. Pres. U.P.R. II, 178 D.P.R. 969, 973 (2010); Lozada Tirado et al. v. Testigos Jehová, 177 D.P.R. 893, 908 (2010).

Asimismo, puntualizamos en Moreno v. Pres. U.P.R. II, supra, que una "controversia abstracta, ausente un perjuicio o amenaza real y vigente a los derechos de la parte que los reclama, no presenta el caso y controversia que la Constitución exige para que los tribunales puedan intervenir".

> Ahora bien, existen varias excepciones a la doctrina de academicidad. Estas operan cuando se plantea ante el tribunal (1) una cuestión recurrente susceptible de volver a ocurrir; (2) cuando el demandado ha cambiado la situación de hechos, pero no tiene visos de permanencia o (3) cuando subsisten consecuencias colaterales que tienen vigencia y actualidad.
>
> Torres Santiago v. Depto. Justicia, 181 D.P.R. 969, 983 (2011).

De esa forma, cuando "se determina que un pleito es académico y que no está presente ninguna de las excepciones que evadirían su academicidad, es deber de

los tribunales desestimarlo". <u>Asoc. Fotoperiodistas v. Rivera Schatz</u>, <u>supra</u>, pág. 936. El poder judicial no tiene discreción para hacer lo contrario. <u>Moreno v. Pres. U.P.R. II</u>, <u>supra</u>, pág. 975. Véase, además, <u>Álvarez v. Smith</u>, 130 S. Ct. 576, 175 L.Ed. 2d 447, 558 U.S. __ (2009).

B. En este caso, es correcta la postura de la peticionaria Junta de Directores. El recurso se tornó académico. Adviértase que la composición de la Junta de Directores y de la Asamblea de Delegados de la Asociación ya no es la misma. Ese cambio en los hechos del caso ha desembocado en que no exista posibilidad de una acción disciplinaria por parte de la Asamblea de Delegados hacia la Junta de Directores, al punto que tenemos ante nos una moción por academicidad de la propia Junta de Directores a la cual se allanó la Asamblea. Cualquier expresión nuestra acerca de esa controversia -que ya no está viva- sería emitir una opinión consultiva. <u>E.L.A. v. Aguayo</u>, <u>supra</u>. Dicho de otro modo, ya no se encuentran presentes ni la asamblea que quería destituir ni la junta que no quiso aceptar la renuncia del Sr. Pablo Crespo Claudio. Además, la Asamblea Legislativa clarificó palmariamente la resolución de futuras controversias similares. Con ello, se disipa la posibilidad de que este caso sea susceptible de volver a repetirse. <u>Torres Santiago v. Depto. Justicia</u>, <u>supra</u>, pág. 983.

En específico, con la aprobación de la Ley Núm. 144, supra, se hace diáfano que los miembros de la Junta de Directores servirán hasta la expiración de su término y hasta que se elijan sus sustitutos. Incluso, se indica que las meras discrepancias entre la Asamblea de Delegados y la Junta de Directores en cuanto al ejercicio de sus facultades, prerrogativas y responsabilidades no constituirán justa causa para que la Asamblea de Delegados discipline a la Junta de Directores, Art. 3 de la Ley Núm. 144, íd.

Asimismo, el extenso Art. 3, íd., indica que la Asamblea de Delegados no podrá intervenir con las acciones que la Junta de Directores lleve a cabo en el ejercicio de sus facultades y deberes. De igual forma, el artículo en cuestión esboza que la Asamblea de Delegados y la Junta de Directores no tendrán personalidad ni capacidad jurídica separada a la de la Asociación de Empleados. Íd. Además, la Ley Núm. 144, íd., prohíbe la presentación de acciones derivativas de la Asamblea de Delegados contra la Junta de Directores, a menos que se les prive indebidamente de ejercer sus facultades, derechos u obligaciones.

Recordemos que en los foros inferiores la controversia se limitó a determinar si procedía una acción disciplinaria en contra de la Junta de Directores por no acatar el criterio de la Asamblea de Delegados. Así las cosas, el alcance de nuestro pronunciamiento

sobre academicidad se limita a eso. No tenemos que resolver si proceden otras acciones legales en contra de la Junta de Directores. Entrar en esa discusión constituiría obiter dictum.

Valga recalcar que la parte recurrida no se opuso a la moción de academicidad que presentó la parte peticionaria. Así pues, resulta forzoso concluir que el cambio en la composición de los cuerpos rectores de la Asociación de Empleados y la nueva legislación transforman este caso en académico. "La Constitución no nos faculta para embarcarnos ahora en un análisis abstracto de estos asuntos". Moreno v. Pres. U.P.R. II, supra, pág. 977.

III

Por los fundamentos que preceden, se deja sin efecto el injunction permanente que emitió el Tribunal de Primera Instancia y que confirmó el Tribunal de Apelaciones. Además, se desestima la demanda, por haberse tornado académica la controversia.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal Supremo. La Jueza Asociada señora Fiol Matta y la Juez Asociada señora Rodríguez Rodríguez disienten sin opinión escrita. El Juez Asociado señor Rivera García emitió voto de inhibición.

Aida I. Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Junta de Directores de la Asociación de Empleados del Estado Libre Asociado y su presidente, Juan J. Lebrón Concepción, en su capacidad oficial, por sí, en representación y para beneficio de la Asociación de Empleados del Estado Libre Asociado de Puerto Rico<br><br>Peticionarios<br><br>v.<br><br>Pablo Crespo Claudio<br><br>Asamblea de Delegados de la Asociación de Empleados del Estado Libre Asociado de Puerto Rico, su presidente, Nery Cruz Reyes, su vicepresidenta Lissette Rodríguez Casado, su secretaria Wanda I. Falú Villegas, y su Macero, Jorge Rodríguez Pérez<br><br>Recurridos | CC-2010-0376 |

Voto de Inhibición emitido por el Juez Asociado señor Rivera García

En San Juan, Puerto Rico, a 21 de junio de 2012.

El Juez suscribiente fungió como Juez del Tribunal de Apelaciones durante el periodo de abril de 2009 a septiembre de 2010. Allí participamos directamente en el recurso de referencia, emitiendo la sentencia que hoy se revisa. La controversia giraba en torno a las facultades de la Asamblea de

Delegados de la Asociación de Empleados del Estado Libre Asociado de Puerto Rico[1] (la Asamblea) y la Junta de Directores de dicha entidad. Resolvimos en aquel entonces que el foro de instancia no erró al declarar Ha Lugar una solicitud de interdicto permanente que se presentó en contra de la Asamblea. Por otra parte, modificamos el dictamen apelado a los fines de establecer que, en virtud de su facultad de nombramiento, esa parte tenía la autoridad de disciplinar y destituir a los miembros de la Junta de Directores. Lo anterior, siempre y cuando el ejercicio de dicha facultad no interfiera con las prerrogativas que se le hubiesen delegado mediante Ley a esta última.

Es por todos conocido que tanto la Regla 63 de las de Procedimiento Civil, 32 L.P.R.A. Ap. V, así como los Cánones de Ética Judicial, exigen que el juez prescinda de incurrir en conductas que denoten o arrojen dudas en cuanto su parcialidad para adjudicar o que tiendan a minar la confianza pública en el sistema de justicia. Este criterio de imparcialidad es de gran transcendencia en nuestro ordenamiento jurídico, toda vez que reafirma la confianza de los ciudadanos en nuestro sistema adjudicativo y además ayuda a mantener bases democráticas sólidas.

---

[1] Hoy denominada Asociación de Empleados de Gobierno de Puerto Rico.

En vista de lo antes señalado, y atendiendo a los mandamientos éticos que rigen nuestro quehacer jurídico, nos inhibimos de pasar juicio sobre los méritos del presente caso.


Edgardo Rivera García
Juez Asociado